trial must be vacated in the absence of a factual basis therefor in the record presented for review (*Montelione* v. *Econ-O-Wash of New Jersey*, 19 A D 2d 545; *Abramson* v. *Kenwood Labs.*, 17 A D 2d 626). Beldock, P. J., Ughetta, Christ, Hill and Rabin, JJ., concur.

■ ʟShɪRLEY LᴇvɪNE, Respondent, v. Jᴏsᴇᴘʜ CᴏʜᴇN et al., Defendants, and Wᴇʟsʙᴀᴄʜ CᴏRP., Appellant.—In a negligence action to recover damages for personal injury, defendant Welsbach Corporation appeals from an order of the Supreme Court, Kings County, entered November 10, 1964, which denied its motion to dismiss the complaint for failure to state a cause of action. Order reversed, with $10 costs and disbursements; motion granted, and complaint dismissed, without costs. The complaint fails to allege the breach of any duty owing from defendant Welsbach Corporation to the plaintiff. Beldock, P. J., Christ, Brennan, Rabin and Benjamin, JJ., concur.

■ LᴏNG IsʟᴀND MᴏvɪNG & SᴛᴏRᴀɢᴇ AssᴏᴄɪᴀᴛɪᴏN, Iɴᴄ., Appellant, v. Lᴏᴜɪs J. Lᴇғᴋᴏᴡɪᴛᴢ, Attorney-General of the State of New York, Respondent. — In a proceeding pursuant to CPLR 2304 to quash a subpœna duces tecum served upon the petitioner by the Attorney-General of the State of New York in connection with his pending investigation, pursuant to the authority conferred by statute (General Business Law, § 343 *et seq.*), into alleged monopolistic practices in the moving and storage industry, the petitioner appeals from an order of the Supreme Court, Nassau County, entered December 17, 1964, which denied its application. Order affirmed, with $10 costs and disbursements. In an investigation pursuant to section 343 of the General Business Law, the Attorney-General has the power to subpœna any books and papers which he deems relevant or material to the inquiry, and, unless the material subpœnaed by him is utterly irrelevant, the court will not interfere (cf. *Matter of La Belle Creole Int., S. A.,* v. *Attorney-General of State of N. Y.,* 10 N Y 2d 192). Under the circumstances here, the fact that prosecution pursuant to sections 341 or 342-a of article 22 of the General Business Law may be barred for violations which occurred during the period covered by the records sought does not render those records utterly irrelevant. The commencement of an action pursuant to some other provisions of article 22 of the General Business Law does not cause an abatement or termination of the Attorney-General's right to continue his investigation and in connection therewith to subpœna witnesses, including those who happen to be defendants in such action (General Business Law, § 343; *People* v. *Anaconda Wire & Cable Co.,* 19 A D 2d 867; cf. *Matter of Hoyt [Attorney-General],* 258 N. Y. 569). The petitioner, a membership corporation, may not resist the subpœna by invoking the privilege against self incrimination on its own behalf; and, insofar as its corporate records are concerned, it may not invoke the privilege on behalf of its officers (cf. *People* v. *De Grandis,* 16 A D 2d 834, affd. 12 N Y 2d 812; *United States* v. *White,* 322 U. S. 694). Beldock, P. J., Ughetta, Christ, Hill and Rabin, JJ., concur.

■ Jᴏʜɴ A. MɪʟʟᴇR, Respondent, v. HᴀvᴇRsᴛRᴀᴡ Dᴇvᴇʟᴏᴘᴍᴇɴᴛ CᴏRP., Appellant.— In an action to recover a real estate brokerage commission earned in pursuance of a written agreement between the parties, the defendant appeals from an order and judgment (one paper) of the Supreme Court, Rockland County, entered July 17, 1964, which granted plaintiff's motion for summary judgment and awarded him the amount demanded in the complaint. Order and judgment affirmed, with $10 costs and disbursements. In our opinion, the defendant failed to raise a triable issue of fact. Beldock, P. J., Ughetta, Hill, Rabin and Benjamin, JJ., concur.

■ EDᴡᴀRD E. MᴜRᴘʜʏ et al., Appellants, *v.* Mᴀx ZɪᴇɢʟᴇR et al., Constituting the Planning Board of the Town of Yorktown, Respondents, and

NEMEROFF YORKTOWN CORPORATION, Intervenor-Respondent. (And Another Proceeding.) — In two consolidated proceedings under article 78 of the CPLR to annul decisions of the Planning Board of the Town of Yorktown which approved the use by the intervenor, Nemeroff Yorktown Corporation, of its property in an M-1 district for parking purposes in connection with a building proposed to be erected on its adjacent property in a C-3 district, the petitioners, who are neighboring property owners, appeal from a judgment of the Supreme Court, Westchester County, entered November 23, 1964, which dismissed their petitions. Judgment affirmed, without costs. The essential facts are undisputed. Intervenor is the owner of over 16 acres of land in the Town of Yorktown, part of which is in a C-3 district in which a retail store is a permitted use under the Zoning Ordinance, and part of which is in an M-1 district zoned for "planned light industry" in which a retail store is not a permitted use. Both districts require off-street parking facilities, the extent of the parking areas being governed in the C-3 district by the extent of the retail floor space, and in the M-1 district by the number of employees. Intervenor planned to construct in the C-3 district a retail store containing 95,000 square feet of sales space which, under the Zoning Ordinance, would require 190,000 square feet of parking space. The requisite parking could not be provided on the 3.26 acres of its property in that district, and intervenor proposed to use a portion of the 12.97 acres which it owned in the adjoining M-1 district for such parking. The intervenor's claim that, as a matter of right it could use a portion of its land in the M-1 district for such parking, was rejected by the court in a prior article 78 proceeding instituted by intervenor to set aside a determination of the Zoning Board of Appeals which upheld the refusal of the building inspector to issue a permit for the construction of such a parking lot. The court in that proceeding, however, held that the Planning Board, under the provisions of section 465.1 of the Zoning Ordinance, had discretion to permit the use of the M-1 premises for the parking required for the retail store. Intervenor did not appeal from that determination but, instead, applied to the Planning Board for such permission. That permission was granted, and the instant proceedings by the neighboring property owners were brought to annul that decision by the Planning Board. In view of the determination in the prior article 78 proceeding, we are of the opinion, and intervenor in effect concedes, that it may use the M-1 premises for parking only if permission therefor is given by the Planning Board (cf. *Friedman* v. *Park Lane Motors*, 18 A D 2d 262). We are also of the opinion that, under section 465.1 of the ordinance, permission may be granted only "if the said Board determines that it is impractical to provide parking on the same lot with the building." The board in its answer has stated that it found such impracticality and has given the reasons for its determination. In our opinion those reasons, adequately set forth in the answer (cf. *Matter of Shell Oil Co.* v. *Farrington*, 19 A D 2d 555), are sufficient to justify the board's action. They include findings, which are undisputed, that the intervenor's plan complied in all respects with the provisions of the Zoning Ordinance, except as to the off-street parking requirements; and the board has concluded that it would be impractical to require intervenor to provide the required parking on the same lot with the building and that "to do so would deprive the intervenor of the right to develop its property in the manner and to the degree provided for in the Zoning Ordinance." We are of the opinion that the Planning Board's determination of impracticality has a rational basis in the record and is not arbitrary, capricious or illegal, and that, under the circumstances presented, the court may not substitute its judgment for that of the administrative agency charged with the duty of interpreting the broad language of the ordinance in the first instance

(cf. *Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104, 108; *Matter of Park East Land Corp.* v. *Finkelstein*, 299 N. Y. 70, 74–75). Ughetta, Acting P. J., Christ, Brennan, Rabin and Hopkins, JJ.

■ HAROLD PETERSEN, Plaintiff, *v.* RAND CONTRUCTION CO., INC., et al., Defendants. SAFWAY STEEL SCAFFOLDS SUPPLY CORP., Third-Party Plaintiff-Respondent, v. JAMES DI BENEDETTO et al., Doing Business as STATE MASON CONSTRUCTION Co., Third-Party Defendants-Appellants. (And Another Third-Party Action.) — In an action to recover damages for personal injury, in which, *inter alia,* the defendant Safway Steel Scaffolds Supply Corp. instituted a third-party action for recovery over against the plaintiff's employers (the defendants Di Benedetto), as third-party defendants; and in which, after a jury trial, a verdict was rendered in favor of the plaintiff and against said defendant Safway, the third-party defendants appeal from so much of the judgment of the Supreme Court, Kings County, entered December 23, 1963 upon the court's decision, as directed recovery over against them in favor of said third-party plaintiff on the basis of alleged contractual indemnity. Judgment, insofar as appealed from, reversed on the law and the facts, with costs, and third-party complaint of the Safway Steel Scaffolds Supply Corp. dismissed, with costs. Findings of fact contained in the court's decision which may be inconsistent herewith are reversed and new findings are made as indicated herein. The third-party plaintiff (Safway) leased the equipment for the construction of a scaffold to plaintiff's employers (Di Benedetto) who were masonry subcontractors. The scaffold was erected by the employers; and the plaintiff was injured as a result of a defective bracket, one of the component parts leased to the employers. In awarding a judgment to plaintiff against Safway, the jury found that Safway furnished a defective bracket and that it was negligent. By stipulation, the issue of contractual indemnity was submitted to the trial court, which held that the contractual provisions were sufficiently explicit and demonstrated a clear intent to indemnify the indemnitee (Safway) against its own negligence. The written agreement between Safway, the lessor corporation, and the plaintiff's employers (Di Benedetto), which contains the contractual indemnity provisions, is denominated as a lease agreement and is in the nature of a receipt or shipping ticket, itemizing the articles delivered to the employers. But it contains other items such as safety rules and regulations, a diagram showing approved bracing methods and "Terms and Conditions." In such Terms and Conditions it is stated, *inter alia,* that: "The LESSEE shall at all times and at his own expense keep the leased equipment in good, safe and efficient working order, repair and condition and shall not permit anyone to injure, deface or remove it or any part thereof. LESSEE agrees to erect, maintain and use said equipment in a safe and proper manner and in conformity with all laws and ordinances pertaining thereto and in accordance with CORPORATION safety rules and regulations. The CORPORATION shall have no responsibility, direction or control over the manner of erection, maintenance, use or operation of said equipment by the LESSEE. The LESSEE assumes all responsibility for claims asserted by any person whatever growing out of the erection and maintenance, use or possession of said equipment, and agrees to hold the CORPORATION harmless from all such claims. LESSEE agrees that use of the leased equipment shall be construed as an absolute acknowledgment by LESSEE that when delivered to LESSEE by CORPORATION the equipment was in good order and repair, was properly erected and was in all respects adequate, sufficient and proper for the purposes for which it was intended." In our opinion, the alleged indemnity provision, viewed in the light of the purposes of the agreement and the pertinent facts and circumstances, falls short of manifesting a clear and unequivocal intent to protect Safway against the consequences of its own negligence (cf. *Jordan*