Bertram Harnett, J.
Northtown Realty Co. owns shopping property along the "Miracle Mile” in Manhasset dominated by a popular Bloomingdale store. It now has ambitious plans to expand its approximate 160,000 square foot holding by another 80,000 square feet and to enclose it all in a new covered shopping mall. A significant obstacle in its path is the North Hempstead parking ordinance which would require 714 spaces, since current plans leave the project 148 spaces short.
In an effort to overcome this, Northtown petitioned the North Hempstead Board of Zoning Appeals for a parking variance along with some access changes in an adjoining street, Brinkerhoff Lane. The board denied Northtown’s petition, and Northtown brought this CPLR article 78 proceeding to us for relief we feel we cannot give it.
As in proceedings of this sort, the issue is not how the court would decide the parking application if submitted to it as a fresh proposition. The issue before the court is whether North-town has established that the board acted unreasonably in *395 turning down its application. (Murphy v Ziegler, 24 AD2d 452.)
Upon review of the record, we cannot conclude the board acted unreasonably in holding the parking line. Indeed, the papers appear to commend the board’s determination.
The Miracle Mile is known throughout Long Island. It requires no expert to know it is a high traffic area. Northtown itself concedes its expansion would increase traffic, but contends that the effect will not be so adverse as to warrant limiting the "logical development of business properties.” But, where is its proof? Or should we color logic "fiscal?” The board considered expert testimony on traffic problems, as well as a written report, which were markedly negative to Northtown’s position, and despite Northtown’s innuendos nothing in the record compelled the board to find it incredible.
One of the purposes of off-street parking specification is to relieve the surface congestion of traffic. Plainly, incoming cars must be put someplace. And, where they are put, and how they are put, are matters of municipal concern. The adjacency of the large school and the interests of the established residential community are added articulated factors not to be lightly ignored. (Matter of Corbett v Zoning Bd. of Appeals of City of Rochester, 283 App Div 282; cf. Matter of Zale v Board of Zoning & Appeals of Town of North Hempstead, NYLJ, Feb. 8, 1973, p 20, col 1, affd 42 AD2d 784.)
Curiously, Northtown objects to the board listening to many speakers with assertedly conflicting economic interests and specious claims of representation. It cites Matter of Douglaston Civic Assn. v Galvin (36 NY2d 1) and other decisions relating to standing to sue of civic and similar loosely formed associations. Somehow Northtown concludes if you cannot sue you cannot press for administrative relief. But, Northtown misses this legal boat entirely. It is the party seeking relief of the board, and those people appearing at the meeting are using a legitimate forum to air their points of view. Notions of standing to sue have to do with wasting judicial time, cluttering the courts with unconcerned objectants or idle litigation, avoiding burdensome and harassing litigation, and insuring that cases of application beyond the litigants themselves will be litigated by informed and truly interested parties. A public board meeting, on the other hand, is an open legislative and administrative opportunity, not a judicial forum. Democracy encourages participation in public hearing. Our system is *396 partially made up of the interplay of selfishly motivated citizens, pushing their own particular interests. Moreover, every veteran meeting goer in municipal precincts is fully aware that if all speakers truly represented all the categories they claim the population of this land must surely be understated.
It is not what the board listens to in its patience and diligence that should concern Northtown. It is the basis on which it acts that is decisive. It is the substantive and demonstrable record of the entire proceeding that is validating.
Northtown does raise one argument of substance, and that is its claim that the parking formula is grossly discriminatory. The town rule calls for one parking space for each 300 square feet in excess of 1,000 feet of usable space. Northtown’s references to unfairness in the application of that formula to office buildings is not relevant here; that is another case for another day. The challenge here is for undeniable high intensity shopping usage. Once again, the burden of proof rests with Northtown.
Why is the formula discriminatory? Because 1,000 foot stores are exempt? Perhaps this provision recognizes the many small off-street stores in countless neighborhoods through the town who require in practice little parking space beyond their curbs and may have no building alternative.
Can walks reasonably be considered usable space when within a covered mall and exempt when in an open air shopping center? Northtown thinks not. But, perhaps there is a different attraction element to a covered all-weather structure which is impervious to heat and cold and rain and snow and wind. Moreover, like any other building, this mail’s corridor and hallway elements would be usable space. The record is entirely innocent of documentation or specific assertion for the invalidity of the town parking ordinance. The ingoing presumption is always that the ordinance is valid. (Wiggins v Town of Somers, 4 NY2d 215.) It is for the attacker to upset it; isolated logical rumination does not address the problem with anywhere near the requisite force.
The town board reminds Northtown, devastatingly, that it shows no economic hardship to it in the current parking restriction (Matter of Fulling v Palumbo, 21 NY2d 30), or in the economic possibilities of any alternate uses. (Stevens v Town of Huntington, 20 NY2d 352.) Northtown made no effort at all to show economic straitening. When confronted with *397 adequate proof of subservience of official action to considerations of communal safety and welfare, Northtown is simply wiped out.
The Brinkerhoff Lane adjustments sought are ancillary to the basic proposition of enlargement of the shopping facility. In pure traffic terms, the proposed change might appear to improve Brinkerhoff Lane by making the sole ingress point much closer to Northern Boulevard, and closing the existing egress entirely. But, this street aspect of the scheme falls moot with the foundering of the main point on the parking restriction.
Accordingly, Northtown’s petition will be denied in a short form order filed with this opinion.