Stanley L. Sklar J.
The petitioner landlord instituted the instant proceeding pursuant to subdivision a of section 52 of the New York City Rent, Eviction and Rehabilitation Regulations to evict the tenant respondent from a rent-controlled apartment, alleging that tenant has violated a substantial obligation of his tenancy by permitting occupancy of the demised premises "by persons other than (tenant) and his immediate family”.
The proceeding was submitted to the court upon an agreed statement of facts.
The tenant, Benjamin Burrows, an 89-year-old attorney, first occupied the apartment in 1928. The parties have been unable to locate the original written lease or any subsequent lease. When the tenant first occupied the apartment, his father and two sisters resided with him. Those relatives subsequently passed away. The last, a sister, died in December, 1975.
A month later, in January, 1976, another sister, Jessie, joined her brother in the apartment. Jessie is 76 years old.
"In early January, 1976, superintendent was introduced to sister Jessie and was told that she became a widow, was *771 giving up her own apartment in the Bronx and would live in apartment with Benjamin Burrows.” In addition, the superintendent saw Jessie at least once weekly and received complaints from her with respect to maintenance matters. Burrows placed Jessie’s name on the mailbox in the lobby. The superintendent saw her name there.
On July 2, 1976, the landlord wrote to Burrows, stating that it had been advised that the tenant was allowing the apartment to be occupied by someone other than himself, in violation of his tenancy and "the applicable rules and regulations of the City of New York”. Upon being advised that the additional person was a third sister, the landlord’s counsel insisted that he had no right to have her live in the apartment without the landlord’s prior consent.
The tenant paid rent, which was accepted, each month from January through August, 1976. Rent payments were made by check during September through December, but were not negotiated by the landlord.
Burrows, and Jessie, starting in January, 1976, advised the superintendent that the apartment, which had not been painted for over six years, needed painting. The request was repeated on a number of occasions. The superintendent told the tenant that he had advised the landlord of the request. The request was reduced to writing in September, and was followed by an application to the Office of Rent Control for a reduction of rent because of the landlord’s failure to paint. The landlord had the apartment painted.
The tenant urged that the petition should be dismissed because: (1) the tenant, as a matter of law, is not violating a substantial obligation of his tenancy; (2) even if a substantial violation were found, it has been waived by the landlord’s acceptance of rent with knowledge of Jessie’s occupancy; and (3) the instant proceeding constitutes a retaliation by the landlord for the tenant’s application for a reduction in rent and is therefore barred by subdivision b of section 51 of the Rent, Eviction and Rehabilitation Regulations.
Matter of Park East Land Corp. v Finkelstein (299 NY 70) is apposite. In that case, the terms of a written lease were projected into a statutory tenancy. The terms included restrictions against assignment or subletting and restricting use and occupancy of the apartment to the tenant and his "immediate family.” The restrictions were acknowledged to be an especial consideration, and it was agreed that their violation entitled *772 the landlord to terminate the tenancy. The tenant died, survived by his widow and son. The widow remarried, and was joined in the premises by her new husband’s daughter and son-in-law, purportedly temporarily. Judge Fuld stated that the lease’s restriction on occupancy was violated since the stepdaughter and stepson-in-law could not be considered kith and kin. However, the Court of Appeals held that the finding of the rent commission that the violation was not of a "substantial obligation” of the tenancy was justified, noting that mechanical application of landlord-tenant rules is unjustified in cases governed by emergency rent legislation. Nor was there any additional burden on the landlord’s facilities. (In the instant case, there is still a decrease in the total number of occupants from the time that Burrows moved into the apartment.)
Park East also noted that the rent law firmly prohibited the eviction of a rent paying tenant. The same command is today found in subdivision a of section 51 of the Rent, Eviction and Rehabilitation Regulations. Today, as was true when Park East was decided, the exceptions enumerated are designed to prevent extreme hardship to the landlord, inconvenience to other tenants or outright illegal action by the tenant.
As noted above, the landlord does not rely upon any lease provision as the source of the substantial obligation allegedly violated by the tenant permitting Jessie to reside with him. Rather, the landlord relies upon subdivision a of section 55, which contains a restrictive definition of "immediate family”. That reliance is misplaced. Subdivision a of section 55’s definition is explicitly limited to that paragraph and related to the circumscribed instances in which a landlord may recover possession of rent-controlled premises for his own use and occupancy of that of his immediate family. The purpose of the Rent, Eviction and Rehabilitation Regulations is the protection of rent paying tenants. Subdivision a of section 55 constitutes an exception to that protection and must not be given a purpose beyond its narrow and explicit mandate.
Moreover, the reliance upon subdivision a of section 55 overlooks definitions of "related persons” contained in other sections of the Rent, Eviction and Rehabilitation Regulations. Section 2 (subd f, par [14], cl [e]) and section 2 (subd f, par [15], cl [f]) which include brother and sister. Those more general definitions, set forth in early definitional sections of the Rent, Eviction and Rehabilitation Regulations, govern herein.
*773 The same result is reached by reviewing subdivision d of section 56 of the Rent Eviction and Rehabilitation Regulations which provides: "No occupant of housing accommodations shall be evicted under this section where the occupant is either the surviving spouse of the deceased tenant or some other member of the deceased tenant’s family who has been living with the tenant.” A broader and more natural dictionary definition of "family” has been ascribed to its use in this section than is permitted by the definition of "immediate family” set forth in subdivision a of section 55. (See Bristany v Williams, 83 Misc 2d 228.) Thus if Burrows had expired prior to the institution of this proceeding, Jessie could remain in occupancy as a member of his family. (See Rubin & Son v Sackler, 190 Misc 2d 1064.)
Again, "family”, as used in section 57 of the State Rent and. Eviction Regulations, was defined to include a nephew and an aunt. (Matter of Osborne v Weaver, 7 AD2d 653.)
For additional instances of definitions which broadly define family and provide rent control protection to its members (see Matter of Waitzman v McGoldrick, 20 Misc 2d 1085; Rent Stabilization Law of 1969, Administrative Code of City of New York, § YY51-4.1, subd [1], par g).
Moreover, it has been held that a tenant’s permitting a member of the opposite sex to live with the tenant, in an often found modern substitution for matrimony, does not constitute a violation of a substantial obligation of tenancy. (Fraydun Enterprises v Ettinger, 88 Misc 2d 617.) (See Edwards v "Roe”, 68 Misc 2d 278.) Since the woman in Fraydun was held to be a member of the tenant’s immediate family, manifestly Jessie is a member of Burrows family.
Finally, even if Burrows had violated a substantial obligation of his tenancy, the facts stipulated demonstrate a waiver by the landlord of that violation. The landlord intentionally accepted rent payments during the first half of 1976 despite knowledge of the facts constituting the claimed violation.
In view of the foregoing, it is not necessary to reach the tenant’s third defense.
The petition is dismissed.