OPINION OF THE COURT
Herbert A. Posner, J.
This summary proceeding in the Housing Court raises an interesting dilemma of a conflict between two “laws” — one written in stone approximately 3,500 years ago and the other written by mere mortals in 1962. The former is the fifth[1] of the Ten Commandments given to Moses on Mount Sinai and the latter is subdivision a of section 52 of the New York City Rent and Eviction Regulations.[2] The landlord’s attorney reminded the court that the Fifth Commandment is not the law of the State of New York. Techni-. caily, he is correct; but, if there is no statute or decisional *405 precedent to the contrary, the social and moral value of adhering to this time-honored canon is worthy of serious consideration in the judicial process. As President Wilson once said, “If we had the eyes to see the subtle elements of thought which constitute the gross substance of our present habit, both as regards the sphere of private life and as regards the action of the State, we would easily discover how very much we owe to the Jews for the *** ten commandments *** and other contributions to western law.”
THE FACTS
Mrs. Paris is a statutory tenant under New York City’s rent control laws. She, her husband and their young daughter moved into the premises, a two-bedroom apartment, on September 1, 1956. By 1980 she was occupying the apartment alone.[3] Mrs. Paris testified that her elderly parents (father 82 and mother 75) had been living in their own apartment for the past five years, not too far from her premises. She testified that they both began to exhibit paranoiac symptoms over the past few months — e.g., (a) the mother refused to take medication from her son, a doctor, believing that he was attempting to poison her; (b) the father insisted on keeping their apartment windows closed during the summer heat, believing that neighbors were going to shoot through the open windows. She testified that the situation reached an “intolerable” level by the end of the summer 1980, necessitating some action on her part to help her parents. Her decision was to persuade her parents to move into the unused bedroom in her apartment. Both Mrs. Paris and her parents testified that no rental or subtenancy relationship was contemplated by the parties. The uncontroverted testimony of the tenant and her parents indicated that Mrs. Paris’ sole motive was that of filial devotion to elderly parents in need of emotional support.
The landlord’s evidence to bolster its contention of a breach of a “substantial obligation” of the tenancy (pursuant to Rent and Eviction Regulations of City of New York, § *406 52, subd a) was the introduction of the lease itself and an oral testimony of the rental agent that the fair market value of the apartment is double the present statutory allowable rent. The lease itself is a preprinted “standard form of apartment lease”. The clause which the landlord claims the tenant has breached, states: “(7) That the tenant shall not assign this agreement or underlet the premises or any part hereof, or make any alteration in the apartment or premises, or permit or suffer upon the premises any act or thing deemed extra-hazardous on account of fire, and he shall not use nor permit to be used the said premises nor any part thereof for any purpose other than that of a private dwelling apartment for himself and his immediate family, consisting of the parties above mentioned.”[4]
THE ISSUES
Based upon the facts in this proceeding there are two issues to be resolved. First, is the landlord’s limitation of “immediate family” to only the tenant, her husband and their unmarried children, a valid interpretation of the lease. Second, if so, does the occupancy of the apartment by Mrs. Paris’ parents (in place of her husband and daughter) constitute a breach of a “substantial” obligation.
THE LAW
After extensive research and inquiry the court could not find a single published case on point.
The landlord bases his legal argument on a unanimous 1949 Court of Appeals decision, Matter of Park East Land Corp. v Finkelstein, which was written by the renowned former Chief Judge Stanley H. Fuld.[5] In Park East, the *407 then existing rent control law permitted a landlord to evict a tenant only after obtaining an eviction certificate from the Temporary City Housing Rent Commission. The original tenant had died and his widow remarried. She movéd into her new husband’s apartment and his married daughter and son-in-law moved into the widow’s old apartment (where a son still resided). The married couple (stepchildren of tenant’s widow) planned to stay for a temporary period and paid no rent to either the mother or the son. The landlord’s application for eviction cited (as in this case) a breach of a “substantial obligation” of the tenancy. The lease contained a covenant restricting use and occupancy of the apartment to members of the tenant’s “immediate family”. It further specified that this covenant constituted “an especial consideration” for the lease and its violation entitled the landlord to terminate the tenancy. The commission conceded that the covenant restricting occupancy to the tenant’s immediate family was projected into the statutory tenancy as a term thereof; but, that its violation in this case was not a breach of a “substantial” obligation.
Judge Fuld, in a well-written decision upholding the rent commission’s findings, stated (supra, p 76) (by way of obiter dictum) that “no claim is made that the landlord will be receiving less than it could obtain from new tenants”. It is these words that the landlord in this case latches on to support its claim of a breach of a “substantial” obligation. To bolster this allegation evidentially, the petitioner offered as evidence the testimony of its rental agent that should the tenant’s apartment become vacant, it could be rerented for double the amount of current rent permitted by law.[6]
The petitioner’s reliance upon this one sentence extracted from Park East is misplaced. First, in 1949 the rent control law did not provide for vacancy decontrol (as today). Second, this point is dictum and is not the main thrust of Fuld’s decision.
The basis for the court’s decision in Park East is the language on pages 74-75: “ ‘Substantial’ is a word of *408 general reference which takes on color and precision from its total context. Having little if any meaning when considered in abstract or in vacuum, it must be defined with reference to the peculiar legal and factual setting in which it occurs. (Cf. Steel Storage & Elevator Constr. Co. v. Stock, 225 N.Y. 173, 179.) Although there are certainly instances where application of such a term poses questions of statutory construction — a matter for the courts — that is not true here. There is no necessity for the courts to formulate, case by case, a completely inclusive and exclusive definition of what constitutes violating a ‘substantial obligation’ of the tenancy; that task is left to the commission, the agency administering the local rent laws. In the functioning of that body, ‘substantial’ constitutes a flexible guide for the exercise of its discretion to grant or withhold an eviction certificate. Applied in that manner, the word has an intelligible connotation, a meaning consistent with the design of the emergency legislation.”
To sum up, Judge Fuld writes on page 76: “In short, the asserted violation is of a purely technical nature, causing the landlord no actual loss, affording the occupant no profit or commercial advantage. Manifestly, ample evidentiary and equitable basis exists for the commission’s determination that the certificate of eviction be denied.”
The other cases cited by landlord are also inapropos. Irweis Holding Corp. v Glenn[7] involved a third cousin and the court properly found that such relative was not a member of the “immediate family”, and in One-Two East 87th St. Corp. v Rees,[8] the case involved a “friend” — no more, no less.
Lower court cases found by this court, were also decided on the basis of the closeness of the family relationship. In Solomon v Burrows[9] Judge Sklar found that a sister could move in with her brother without resulting in a violation of a substantial obligation. Judge Wahl, in Mideast Holding *409 Corp. v Tow,[10] found that a godson did not fall into the category of immediate family; and, therefore, the tenant had violated a “substantial” obligation of the lease.
An examination of all the sections in the rent control laws and regulations defining “immediate family” and “related persons”* [11] reveals that parents are included in all instances. Further, all of the published cases seen by this court involve standard leases with covenants that refer to the “tenant and his immediate family.” However, in this case, we are dealing with language (as above) that states, “and his immediate family, consisting of the parties above mentioned” (Emphasis added.)
ANALYSIS OF FACTS AND LAW
A strict interpretation of the lease under common-law rules of landlord and tenant law would most likely have resulted in an eviction. However, as Judge Fuld wrote in Park East (299 NY 70, 75, supra) “If anything is clear, it is that mechanical application of common-law rules will not promote reasonable decision in cases controlled by emergency rent legislation”. Therefore, the facts of this case must be analyzed in the context of the intent and provisions of the city rent and rehabilitation law:[12] and not by virtue of the common-law breach of contract theory or by any section of the Real Property Law (such as §§ 228, 232) or Real Property Actions and Proceedings Law (such as §§ 711, 713). The “rent control” law supersedes all other statutes and rules.
The prime purpose of the statute is aptly described in its title, “Residential Rent Control”; and, the reasons[13] for the law are just as valid today as they were in 1962.[14] Section 51 of the regulations is entitled “Restrictions on removal of *410 tenants”. The language is worded[15] to protect the tenant and put the burden on the landlord to prove that the grounds for the eviction constitute an exception under section 52. Section 52 contains various grounds under which a landlord may terminate the tenant’s statutory right to remain in the apartment inviolate. Hence, section 52 is a shield to protect the landlord from abuse. It is not a sword to sever the tenant’s statutory suzerainty solely for the purpose of securing monetary succor.
In this case, the landlord has not offered one scintilla of evidence that there has been an increase in the total number of tenants, in the landlord’s burdens or costs, or in the wear and tear upon facilities; nor is a claim made that this elderly couple are a nuisance. In fact, the only claim that landlord makes is that if he can evict everybody his rental income from this apartment will double.[16]
There is no question that a landlord is entitled to the protection of section 52 where the tenant has abused the statutory privilege of rent control by some harm to the premises, the landlord or other tenants. A landlord would be abused if the tenant attempts to “traffic” in the apartment by subletting to strangers or permitting relatives to in effect “inherit” the apartment.
As the Appellate Term, First Department, recently Wrote in an eviction proceeding:[17] “The manifest purpose of *411 emergency rent legislation is to secure to a tenant in possession the right to be continued in possession at a regulated rental. We find the totality of tenant’s conduct to be inconsistent with this objective and constitutes a material breach of the obligations of a statutory tenancy.”
In the above case the tenant had permitted the apartment to be “occupied by a series of persons, not members of tenant’s immediate family”.
CONCLUSION
While, technically, a narrow interpretation of the lease indicates a breach of the obligation to limit occupancy of the apartment to husband, wife and unmarried children, this court finds that there has been no breach of a “substantial” obligation as required by subdivision a of section 52. Thus, it is seen that the public policy of this State (as expressed by statute and decisional law) is not in conflict with the fifth of the Ten Commandments. It is all too rare (in these troublesome times of self-indulgence) to find people willing to sacrifice their own comfort and serenity for the sake of their parents. Therefore, far be it for the courts to punish such devotion by a narrow, mechanical interpretation of the law.
The petition is dismissed without prejudice to landlord making an application under section 33.4 (unique or peculiar circumstances) for an increase in the maximum rent by the rent administrator. This court is confident that a reasonable increase would be granted inasmuch as tenant has indicated that she is quite willing to pay a higher rent. Her goal was not to “dishonor” the law, but to “honor” her parents.

. Exodus, ch 20, v 12, “Honour thy father and thy mother”.

. Section 52 (Proceedings for eviction without certificate):
“Except as provided * * * an action or proceeding to recover possession of any housing accommodation shall be maintainable, after service and filing *** upon *** following grounds:
“a. The tenant is violating a substantial obligation of his tenancy *** and has failed to cure such violation *** or within the 3 month period immediately prior to the commencement of the proceeding, the tenant has wilfully violated such an obligation inflicting serious and substantial injury upon the landlord”.

. There was no testimony at the hearing as to what happened to Mr. Paris or the daughter.

. The only parties “above mentioned” were Mr. Paris. Neither Mrs. Paris nor their daughter are mentioned. The language “above” states, “to be occupied as and for a private dwelling apartment only by the tenant and his own unmarried children who presently are___aged___respectively; totaling_ persons in all”. Although the lease is only in Mr. Paris’ name, there is a rider attached to the lease signed by both Mr. and Mrs. Paris and using throughout the rider the pronoun “we”. Although the singular noun and pronoun are used, it would seem that the plural was intended for couples.

. Matter of Park East Land Corp. v Finkelstein, 299 NY 70 (hereinafter referred to as ‘Park Easf’).

. This argument could be used to “bootstrap” any breach (no matter how trivial) into a breach of a “substantial” obligation; because with vacancy decontrol the landlord can always obtain substantially more rent.

. 2 Misc 2d 804.

. 35 Misc 2d 158.

. 90 Misc 2d 770.

. 60 Misc 2d 422.

. Rent and Eviction Regulations of City of New York, § 2, subd f, pars (14), (15); § 55, subd a; §§ 56, 57.

. Title Y of chapter 51 of the Administrative Code of City of New York; Local Emergency Housing Rent Control Act (L 1962, ch 21).

. Section Y51-1.0 of the Administrative Code — Declaration and findings. “The council hereby finds that a serious public emergency continues to exist in the housing of a considerable number of persons in the city *** that unless residential rents and evictions continue to be regulated and controlled”.

. The present statute (with amendments) took effect May 1, 1962.

. Subdivision a of section 51 of Rent and Eviction Regulations of City of New York “No tenant, so long as he continues to pay the rent to which the landlord is entitled, shall be removed from any housing accommodation by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that the tenant has no lease or that his lease, or other rental agreement, has expired or otherwise terminated, and notwithstanding any contract, lease agreement or obligation heretofore or hereafter entered into which provides for surrender of possession, or which otherwise provides contrary hereto, except on one or more of the grounds specified in Section 52 of these Regulations, or unless the landlord has obtained a certificate of eviction as hereinafter provided.”

. Actually eviction is not what the landlord really wants. He would have been willing to let Mrs. Paris’ parents stay if she paid a higher rent. Ironically, she was willing to do so and the court could have settled the case on this basis; but, the law forbids the landlord to accept more than a 10% increase and none where the additional occupants are members of the immediate family. Section 33.3 of the Rent and Eviction Regulations of City of New York states: “The Administrator may grant an appropriate adjustment of a maximum rent where he finds that there has been since March 1, 1959 *** an increase in the number of adult occupants who are not members of the immediate family of the tenant.

. 221 East 76th St. Assoc. v Steinberger (NYLJ, Feb. 26, 1980, p 6, col 3).